[No. 11007.   Department One.   July 15, 1913.]

ORR COMPANY, *Respondent*, v. INTERLAKEN LAND COMPANY, *Appellant*.[1]

BROKERS—COMMISSIONS — CONTRACTS — PERFORMANCE—"SALE."  A broker, having a contract for the exclusive sale of a large tract of residence property on commission, did not make a sale entitling him to commissions, where, in the hope of inducing sales of the balance of the property, he procured a building company to enter into a contract to draw plans for and put up ten residences under a co-operative plan, work on which was to proceed only on the sale of each successive lot to third parties, and no present title passed, the owner merely agreeing to pass title to the building company in order to se: cure a loan for fifty per cent of the cost of the buildings, give a second mortgage, and make sales to third parties, no such sales being made by the broker and the second contract not providing for the payment of commissions; since the execution of the second contract *ipso facto* withdrew the property specified from the operation of the first contract, without effecting any sale thereof.

SAME—CONTRACTS—FRAUDS, STATUTE OF.   Under Rem. & Bal. Code, § 5289, providing that a contract for a broker's commission on the sale of real estate must be in writing, a broker is not entitled to commissions unless the writing determines the amount of the agreed upon commissions without resort to parol testimony.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 21, 1912, upon findings in favor of the plaintiff, in an action on contract, tried to the court.   Reversed.

*J. Y. C. Kellogg*, for appellant.

*Charles P. Harris*, for respondent.

GOSE, J.—This is a suit to recover a broker's commission upon an alleged sale of real estate.   The case was tried to the court.   There was a judgment for the plaintiff.   The defendant has appealed.

Respondent's claim has its basis in two written contracts. The first contract was made on the 16th day of November,

[1]Reported in 133 Pac. 599.

1909, between the appellant as the party of the first part, and the respondent as the party of the second part. The appellant then owned an addition of high class residence property which it desired to convert into cash to the extent of about $430,000 as soon as possible. This contract provides that the appellant constitutes and appoints the respondent "its sole agent for the sale" of all unsold lots in Interlaken, an addition to the city of Seattle; that the agency shall continue in force for one year from the date of the contract; that the terms on which all lots shall be sold are "one-third cash, the balance in four equal semi-annual payments," with interest on all deferred payments as specified; "provided, however, that a reduction of two and one-half per cent shall be allowed for all sales for cash, and provided further, that any purchaser desiring to build immediately on the lot or lots purchased" may purchase on the basis of one-fourth cash, the balance in four equal semi-annual installments, with interest on deferred payments as stipulated; and that when the sale is for cash, and the purchaser desires to build immediately on the lot purchased, there shall be a discount of four per cent of the purchase price, in addition to the two and one-half per cent discount above specified; that the respondent "shall be entitled to receive twenty per cent commission on the actual purchase price of any property sold . . . to be paid it on the execution and delivery of the purchase deed when the sale is for cash, otherwise one-half of said compensation or commission to be paid to the party of the second part upon the execution and delivery of the contract for sale and that the other half of said compensation to be paid to the party of the second part upon the collection of the first deferred payment." The contract further provides that if the total sales made by the respondent should not reach seventy-five thousand dollars by May 16, 1910, or $150,000 by August 16, 1910, that the appellant might at its option terminate the contract by giving the stipulated notice.

On the 6th day of December following, the respondent in-

duced the appellant to enter into a contract with the W. M. Lucas Building Company, a corporation, which provides that the latter company should prepare plans, elevations, and specifications for a dwelling house for each of ten enumerated lots in Interlaken, subject to approval by a representative of the appellant; that the dwelling houses should cost the sums respectively enumerated in the contract, ranging from $3,500 to $5,000; that the specifications for the first house to be constructed should be submitted for approval within fifteen days after date of the contract; plans for the second house within thirty days; plans for the third house to be submitted within forty-five days; and that thereafter it should submit plans for a house every twenty days until the plans, elevations, and specifications should have been submitted for the ten houses to be constructed under the contract. The contract further provides, that within ten days after any approval of the plans, elevations and specifications for a house on any lot, the building company is to commence the work of excavating for such house, and have the same under roof and plastered within ninety days after such approval, and completed and ready for occupancy within one hundred and eighty days after such approval; "provided, that after the commencement of work on the third house the party of the second part (the building company) shall not be required to commence work on any further house until a sale of one of said lots shall have been made; and after each such sale, the party of the second part shall, within five days, commence work on another house and lot; it being hereby understood and agreed that no house shall be commenced after ten months from the date of this contract."

It was further stipulated "that whenever any house erected on any of said lots has been fully roofed and plastered, the party of the first part (the appellant) upon payment to it by the party of the second part of the sum of one hundred dollars, will sell and convey such lot to the party of the second part by a good and sufficient deed of general war-

ranty, free and clear of all incumbrances of whatsoever nature except the lien of paving assessments, and any assessments which may become a lien after the date of this contract, for the purpose of enabling the said party of the second part to obtain a building loan on said property due in not less than three nor more than five years, said loan not to exceed fifty per cent of the value of the property, and to bear interest at the rate of seven per cent per annum, and for the further purpose of enabling party of the second part to make a contract of sale of said premises to some third party"; that "the prices and terms on which such sales by the party of the first part shall be are" as therein specifically enumerated. It was further agreed that each deferred payment should be evidenced and secured by a promissory note, and second mortgage upon the lot, and residence erected thereon; that if the building company was not in default as to any of its covenants, the appellant would cancel the note and mortgage made by the building company to it on any lot "upon notice of sale and conveyance of said lot by the party of the second part to some third party, and upon presentation to the said party of the first part of a new note and mortgage made by said third party in favor of the party of the first part for the balance of the principal and interest due on said lot, payable according to the terms of such new note and mortgage, in four equal semi-annual payments" with interest as stipulated, such mortgage to be a lien on the lot paramount to all other liens and incumbrances, except the building loan mortgage; and that, if the total amount of the deferred payments should be less than the unpaid purchase price of the lot, the difference should be paid in cash by the building company to the appellant.

The contract further provides that the mortgage and notes executed by third parties should be in favor of the appellant, to the extent of the principal and interest due it under the second mortgage executed to it by the building company. It was further agreed that the appellant should

have the right to terminate the agreement at its election, giving written notice in the manner stipulated in the contract; that "as to each of said lots," if the building company had not made a sale thereof within nine months after the date of the sale of the lot to it by the appellant, then the appellant might at its option at any time thereafter, before a sale to a third party, repurchase the lot from the building company upon payment to it of the cost of the improvements thereon, plus the one hundred dollars theretofore paid on the lot, and less the amount of any incumbrance placed or suffered to be placed thereon by the building company. It was further provided that if the building company had not made any such sale within fifteen months from the date of the conveyance of the lot to it, then that either party to the agreement might apply to the superior court of King county for an order directing the sale of the premises in the manner provided by law for the sale of real estate on execution, the net proceeds thereof to be divided between the parties pro rata, according to their respective interests.

It is alleged in the complaint that this contract was entered into through the "exclusive efforts" of the respondent.

The first question presented is, was the second contract a sale? The respondent asserts that it was; whilst the appellant contends that it created an agency or a trusteeship. We cannot construe the contract as a sale. A reading of the contract as a whole forces the conviction that it constitutes the building company an agent, coupled with an interest. It creates a mere cooperative plan whereby the appellant furnished the land, and the building company was to furnish satisfactory plans and specifications, and erect residences upon the lots with the view of selling the properties to third parties to the mutual advantage of the contracting parties. The contract, when read as an entirety, has none of the elements of a sale. It passes no present title, but merely agrees to pass the title to the building company in order that it might (a) secure a loan upon the property for fifty per cent of the cost

of the building; (b) give a second mortgage to the appellant for the purchase price of the respective lots in excess of one hundred dollars; and (c) make sale of the respective lots to third parties, substituting the security given by the purchaser for the security given by the building company.

The execution of this contract at the instance of the respondent *ipso facto* withdrew the property therein specified from the operation of the first contract. There was no provision for a commission in the second contract, and therefore there can be no recovery.

The contracts are too lengthy to be set forth *in extenso*. The first contract covers ten pages of the printed brief; the second contract covers sixteen pages of the brief. We have, however, set forth sufficient of both contracts to render a discussion intelligible. The statute of frauds presents a second barrier to the recovery of a commission. There is a vital difference in the essential portions of the two contracts. It is apparent from the first contract that it was the desire of the appellant to convert the property into a cash equivalent, with all possible dispatch. It is also apparent that the second contract was made in the hope that it would quicken the sale of the remaining property, and thus redound to the mutual advantage of the first contracting parties. In the furtherance of this end, the appellant induced the respondent to enter into a second contract, which standing alone, gave no promise of cash sales. The second contract is complete in itself, except upon the question of a commission, and while not signed by the appellant, it is conceded that it caused it to be made. It makes no provision for a commission; hence there can be no recovery. The case, in this respect, is controlled by *Forland v. Boyum*, 53 Wash. 421, 102 Pac. 34. In that case the owner entered into a contract with a broker whereby she gave him the exclusive right for a period of thirty days to sell the property described in the contract, at a fixed price, upon an agreed commission. Later, upon the same day, the broker entered into a written contract with a purchaser for the sale

of the property, and received five hundred dollars as earnest money. The owner indorsed her approval upon the contract. The contract provided that if the purchaser defaulted, the earnest money should be forfeited to the broker "to the extent of their agreed upon commission." We held that the "suit, if sustained at all, must be sustained under the second contract;" that it was not a modification of the first contract, but that it was a "complete independent contract, certain in all its terms except the amount of commission to be paid;" that to ascertain the commission, parol testimony must be resorted to, and that the statute of frauds (Laws 1905, p. 110, § 1; Rem. & Bal. Code, § 5289; P. C. 203 § 3) stood as a barrier to a recovery.

In the case at bar the respondent contends that it is entitled to a twenty per cent commission stipulated in the first contract of sale. Testimony was offered on the part of the appellant to the effect that it was expressly agreed that there should be no commission flowing from the latter contract unless the respondent procured a sale of that property to a third party, which it made no pretense of doing. This testimony was not competent, and we only refer to it to show the wisdom of the law, and the necessity of adhering to it in all cases where a recovery is sought in the face of the statute.

Reversed, with instructions to dismiss.

Chadwick, Mount, and Parker, JJ., concur.